## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Cr. No. 20-215 (JEB) |
| | ) |
| ISRAEL FUENTES, | ) |
| | ) |
| Defendant. | ) |

## SENTENCING MEMORANDUM

Mr. Fuentes, through undersigned counsel, respectfully submits this memorandum requesting that the Court consider the various legal arguments made in this sentencing memorandum in determining a fair and just sentence.

## BACKGROUND

On July 15, 2021, this Court accepted Mr. Fuentes's guilty plea to Count One of the Indictment that charged him with Bank Robbery, in violation of 18 U.S.C. § 2113(a).  Mr. Fuentes's sentencing hearing is scheduled for February 7, 2022.

## ARGUMENT

Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, **recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.**  (Emphasis added).

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]."  18 U.S.C. § 3553(a).

When sentencing a defendant, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 49-51 (2007). Rather, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the court to consider. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50. Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. *Rita v. United States*, 551 U.S. 338, 348, 350 (2007). Consequently, this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." *Id*. at 358; *see also Gall*, 552 U.S. at 52 ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996))). Indeed, sentencing has been aptly described:

> Of course, each defendant must be assessed on his or her own terms: courts are not machine presses and sentences are not widgets to be churned out on some criminal justice conveyor belt. But a properly calculated guidelines sentence provides useful data, a "starting point" or "initial benchmark," even as it remains the judge's duty to tailor every sentence to the case and defendant at hand.

*United States v. Sabillon-Umana*, 772 F.3d 1328, 1330 (10th Cir. 2014) (Gorsuch, J.) Ultimately, this Court must make an "individualized judgment about the case at hand." *Id.* at 1331.

The D.C. Circuit has emphasized "that the Guidelines are truly *advisory*." *United States v. Gardinelli*, 545 F.3d 1089, 1096 (D.C. Cir. 2008) (emphasis in original). The Court in *Gardinelli* noted that the Supreme Court's decision in *Gall* gave "district judges *even more* discretion and authority." *Id.* (emphasis in original). Indeed, the Court in *Gardinelli* pointed out that in *Gall* the Court affirmed a probationary sentence for a defendant whose guidelines range was 30 to 37 months. *Id.* at 1095.

Notably, a U.S. District Court Judge explained the following:

> During the sentencing hearing, the lawyers and the judge discuss the appropriate sentence, often at great length, but after the judge announces a decision, that judge, the lawyers, and the staff move on to the next case; the hearing and outcome soon fade into distant memory. Meanwhile, for the defendant, the torture of a monotonous existence begins, while life for his family moves forward without him. For him, every day, month and year that was added to the ultimate sentence will matter. The difference between ten and fifteen years may determine whether a parent sees his young child graduate from high school; the difference between ten and fifteen months may determine whether a son sees his sick parent before that parent passes away; the difference between probation and fifteen days may determine whether the defendant is able to maintain his employment and support his family. Thus, it is crucial that judges give careful consideration to every minute that is added to a defendant's sentence. Liberty is the norm; every moment of incarceration should be justified.

*See United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at *3-4 (D. Md. Feb. 18, 2020).

Mr. Fuentes respectfully submits that the factors under § 3553(a) warrant a sentence below the calculated guideline range. Importantly, Mr. Fuentes respectfully submits that a sentence that runs concurrent with his sentence in Maryland is sufficient under the factors of § 3553(a). *See* PSR, ¶ 43, pg. 15.

I.  **Sentencing Guidelines Calculations**

According to the PSR, the applicable guideline to Mr. Fuentes's criminal conduct is found at U.S.S.G. § 2B3.1(a) which results in a base offense level of 20.  *See* PSR, ¶ 19 pg. 5.  Two levels are added because property of a financial institution was taken pursuant to U.S.S.G. § 2B3.1(b)(1).  *See* PSR ¶ 20, pg. 5.   Further, Mr. Fuentes has accepted responsibility for his offense, thus a three-level reduction is applicable pursuant to U.S.S.G. § 3E1.1.  *See* PSR, ¶ 26-27, pg. 6.  Therefore, the total offense level is 19.  *See* PSR, ¶ 28, pg. 6.   The PSR also notes that the applicable criminal history category is VI.  *See* PSR, ¶ 46, pg. 16.  Based upon a criminal history score of VI, with a total offense level of 19, the resulting guideline range is 63 to 78 months.  *See* PSR, ¶ 92, pg. 25.  Mr. Fuentes does not dispute these calculations; however, he respectfully submits that his criminal history category is overstated and thus a downward departure is warranted.  Mr. Fuentes further submits that notwithstanding his downward departure argument, any sentence imposed should be imposed concurrently to his Maryland sentence.

      A.      **This Court Should Grant Mr. Fuentes a Downward Departure to Account for his Overstated Criminal History Pursuant to U.S.S.G. § 4A1.3**

Under the Sentencing Guidelines, when a "defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes," a downward departure is warranted. *See* U.S.S.G. § 4A1.3(b)(1); and *United States v. Beckham*, 968 F.2d 47, 53-54 (D.C. Cir. 1992) (recognizing downward departure where accused criminal history over-represents the seriousness of past criminal conduct and the likelihood of recidivism).

In determining whether to grant a downward departure under U.S.S.G. § 4A1.3, courts should compare the defendant's criminal history with others who occupy the same criminal

4

history category. *See* U.S.S.G. § 4A1.3. When making a comparison in the instant case, it is clear that the Criminal History Category of VI assigned to Mr. Fuentes significantly over-represents the seriousness of his criminal history. Mr. Fuentes submits that the convictions involving possession of marijuana and paraphernalia from the years 2013 and 2014 should not be counted for criminal history points. *See* PSR ¶ 30, pg. 7; ¶ 32, pg. 8; ¶ 34, pg. 9, and ¶ 35, pg. 9. These convictions add 4 points to his criminal history score. Notably, all of this conduct is now decriminalized. See https://marijuanaandthelaw.com/state-laws/maryland/ Because this conduct is now decriminalized, Mr. Fuentes respectfully submits that this Court should consider his placement in criminal history category VI – the highest category – as over-representative of his criminal conduct. If this Court discounts the four points added to his criminal score for this reason, the applicable criminal history score is IV. Therefore, Mr. Fuentes respectfully submits that a criminal history category IV is more consistent with what his criminal history reflects.

In addition, Mr. Fuentes also notes that the 3 points for his prior robbery conviction in Montgomery County, Maryland – which occurred on April 29, 2019 - is part of the same relevant conduct, common scheme or plan and thus may also be considered in determining his placement into criminal history category VI. *See* PSR, ¶ 43, pg. 15. If this Court were to further determine that the assessment of three criminal history points for the same course of conduct which is now before the Court, further over-represents his criminal history calculation, his criminal history category could result in category III. A total offense level of 19, with a criminal history category of III, results in a range of 37 to 46 months.

Overall, Mr. Fuentes submits that his placement into criminal history category VI significantly over-represents the seriousness of his criminal history. Mr. Fuentes argues that the associated criminal history points assessed for decriminalized marijuana offenses substantially

over-represent the seriousness of his criminal history and thus should be considered in determining an appropriate sentence. *See* PSR, ¶ 122, pg. 30.

> **B. Because this offense was part of the same course of conduct in his Maryland case, the sentence should be imposed concurrently to his Maryland case.**

Pursuant to U.S.S.G. § 5G1.3(b), if a

"term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:

> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

*See* U.S.S.G. § 5G1.3(b).

The application of U.S.S.G. §5G1.3 is triggered by U.S.S.G. §1B1.3 (a) (2) which governs the same course of conduct or common scheme or plan as the offense of conviction. The Maryland offense is part of a spree of crimes, were enacted with the identical scheme and plan and occurred in the same time period. Notably, Count One of the Indictment, to which Mr. Fuentes pled, occurred on April 8, 2019. *See* PSR, ¶ 8, pg. 4. The conduct in which Mr. Fuentes is currently serving a sentence in Maryland occurred on April 29, 2019. *See* PSR, ¶ 43, pg. 15. Count Two of the Indictment, which will be dismissed at the conclusion of the sentencing hearing before this Court, occurred on May 1, 2019. *See* PSR, ¶ 14, pg. 5. Therefore, any sentence imposed should run concurrently to the sentence in Maryland.[1]

---

[1] The probation office sentencing recommendation also notes that any sentence should be imposed concurrently to any other term imposed. *See* ECF 22, pgs. 2 and 4.

## II. The Need for the Sentence Imposed

18 U.S.C. § 3553(a) directs the Court to consider four objectives of federal sentencing to impose a sentence that is "sufficient, but not greater than necessary" to achieve those goals. The first purpose is to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Mr. Fuentes understands the seriousness of his offense. He has suffered emotionally from witnessing violence and has lost his own family members to gun violence in his community.

The second purpose of sentencing is to "afford adequate deterrence." *Id.* at § 3553(a)(2)(B). While "[p]rison is an important option for incapacitating and punishing those who commit crimes," evidence shows that lengthy prison sentences do not have a "chastening" effect and "produce at best a very modest deterrent effect." *Five Things About Deterrence*, Nat'l Inst. Justice, U.S. Dep't of Justice (May 2016) at 1-2. Research shows conclusively that "[t]he *certainty* of being caught is a vastly more powerful deterrent than the punishment," that "[s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime," and that "[i]ncreasing the severity of punishment does little to deter crime." *Id.* (emphasis in original). Significantly, "the crime prevention benefit falls far short of the social and economic costs," *id.* at 2, especially in light of the fact that U.S. Sentencing Commission "research has demonstrated that reductions to sentence length and time served do not harm public safety," *Transforming Prisons, Restoring Lives*, Charles Colson Task Force on Federal Corrections, Urban Inst. (Jan. 2016) at 21. *See also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardoza J. Conflict Resolution 421, 447-48 (2007) ("Certainty of punishment is empirically known to be a far better deterrent than its severity.").

"[T]here is little evidence that increases in the length of already long prison sentences yield general deterrent effects that are sufficiently large to justify their social and economic costs." Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013). "[L]engthy prison sentences cannot be justified on a deterrence-based, crime prevention basis." *Id.* at 202. "[E]vidence in support of the deterrent effect of various measures of the certainty of punishment is far more convincing and consistent than for the severity of punishment. . . . The evidence in support of certainty's deterrent effect pertains almost exclusively to apprehension probability.  Consequently, the conclusion that certainty, not severity, is the more effective deterrent is more precisely stated as *certainty of apprehension* and not the severity of the legal consequence ensuing from apprehension is the more effective deterrent. . . . Thus, this revised conclusion about the deterrent effect of punishment certainly should not be construed as implying that policies mandating severe legal consequences have been demonstrated to achieve deterrent effects." *Id.* at 201-202.

The third purpose of sentencing is to "protect the public from further crimes of the defendant." *Id.* at § 3553(a)(2)(C).  Mr. Fuentes is not going to re-offend, in fact, this case has been a defining moment for him and where his life is headed.   Mr. Fuentes needs intensive supervision that will afford him opportunities to obtain employment and further his education.

### III.    A Sentence Below the Guideline is Not an Unwarranted Sentencing Disparity

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar

in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004).

Mr. Fuentes respectfully notes that a bank robbery case before Judge Amy Berman Jackson, *United States v. Michael Cowan*, Cr. No. 18-208 (ABJ), is instructive on the issue of unwarranted disparity.  In that case, Judge Jackson imposed a sentence of 40 months concurrent to the 60 month sentence imposed in the Maryland case.  Notably, the applicable guideline range to Mr. Cowan's conduct resulted in a range of 77 to 96 months; and like Mr. Fuentes, the conduct involved three banks – 2 in the District of Columbia and 1 in Maryland.  While every case is different, as are the characteristics of each defendant, Mr. Cowan's case was the most similar undersigned counsel could find to demonstrate that a below guideline and concurrent sentence for Mr. Fuentes is not an unwarranted sentencing disparity.

## **CONCLUSION**

A sentence below the calculated guideline range, to be imposed concurrently to his Maryland sentence, followed by a two-year term of supervised release is a serious consequence that will more than adequately punish Mr. Fuentes for his particular conduct; it will also adequately deter any future wrongful conduct; and thus meets all of the goals of sentencing.

        Respectfully submitted,

        A.J. KRAMER
        FEDERAL PUBLIC DEFENDER


        _____/s/_____
        Dani Jahn
        Assistant Federal Public Defender
        625 Indiana Avenue, N.W., Suite 550
        Washington, D.C.  20004
        (202) 208-7500